The next case on our calendar is Jonathan Lee Sosnowicz v. Attorney General for the State of Arizona and Ryan Thornall, Director of the Arizona Department of Corrections, and that case has been submitted on the briefs. The next case on our docket is Brian Allen Arnett v. Pete Buttigieg, Secretary of Transportation. You may come forward. Thank you. Good morning. May it please the court. I am Attorney Ann Sultan, and with me today is my client, Brian Allen Arnett. The answers to the questions posed in the court's January 12, 2024, order at docket number 26 are in answer to question number one, whether in 2017 and 2018 plaintiff was applying for an original appointment to a position as an air traffic controller. The answer to that question is no. The record support for that answer can be found at ER 51. Only current FAA employees can apply for any of these positions. Also at ER 52, one-year FAA experience is required. At ER 185, again, only current FAA employees can apply. At ER 193, the document says must have held an FAA 2152 FG14 or above position or one-year experience at a facility rated or either a MSS position for one year. At ER 195, again, it says only current FAA employees can apply. At ER 201, same thing as noted at ER 193. At ER page 204, again, it says it must have held, the applicants must have held an FAA 2152 FG14 position. Ms. Holton, I think you're getting to why we ask these questions about the suggestions in the record that this wasn't an original appointment due to the qualifications of the jobs for which Mr. Arnett was not hired. Was this issue raised in the district court? How did you preserve this kind of the 3307 question and the framing this as an original appointment? There's several discussions, I think, of that this was not an initial appointment, but the statutory language that we're focused on is the original appointment. Did you preserve this argument? I believe so, Your Honor. The record that we filed on appeal are the same documents that were filed before the district court in response to the agency's motion for summary judgment. So we did raise the issue, repeatedly talked in the factual section about Mr. Arnett had been initially appointed on a five-year contract in 2007. Again, he was appointed to a five-year contract in 2014. And that this was not an original appointment. This was not an initial appointment. He was applying already from a position of being a permanent employee, and he was able to obtain that permanent position because he was able to satisfy the application requirements of a year in service to the agency already. Is there a violation of the ADA outside of the 3307B exception if the agency treated all similarly situated individuals as original appointments under their policy? In other words, I think there's suggestion on the agency's side that there's guidance that these are all original appointments from the point at which the new hire takes place. That's the original appointment. If they apply that consistently, can we find that it's still a violation of the ADA outside of 3307? Well, I think not. I think that the definition of original appointment, as you're requesting in question number three, that there is a definition that the agency provides, and that can be found at ER 72 when looking at paragraph 3D. It talks about enter on duty date. At paragraph 4A, the last paragraph of that section, it talks about, again, enter on duty date. And at paragraph 4A, again, on page ER 72, the last sentence of paragraph 2, it states ATCS position for the first time. So whenever they're talking about an original appointment, they're talking about the very first time you came in to the agency to work for us. If I could now go to the answer to question number two. Thank you, Your Honor. I see this as a two-part question. I see the first part as being whether EMP 1.20 requires individuals initially appointed to air traffic controller positions under the age of 30 to continuously hold air traffic controller positions while over the age of 31 in order to be eligible for promotions to other air traffic controller positions. I believe the answer to this question is no. The record support can be found at ER 72 where it states, again, if an individual has previously held ATCS position, then he, she may be appointed if over age 31. So the word previously is used. The word continuously is not used in EMP 1.20. And we do know, and it's undisputed, that the plaintiff previously held ATCS positions with the FAA position at the time he applied for the positions at issue. The second part of the question, whether such individuals may transfer to non-air traffic controller positions and still be eligible for promotions to air traffic controller positions, the answer to that question is yes. There is no such requirement that FAA air traffic controllers remain in a position or in that line called air traffic control. They can freely transfer between air traffic and non-air traffic control positions. For the temporary positions, they remain always in their position of record and return to it when the temporary assignment ends. You'll find that support at ER page 28, ER page 66, and ER page 59. Also, some air traffic controllers will transfer out of the air traffic control line into a non-air traffic control line and then transfer back because they're trying to earn their 20 years of good time, which allows them to retire with full retirement benefits at age 56 or before age 56 if they have their 20 years in. However, to enjoy this flexibility to move between air traffic and non-air traffic positions, the FAA employee must maintain their medical clearance and their certifications to operate the machines that help control our air traffic. Mr. Arnett continuously maintained his currency. Also, when looking at docket entry 15-2, page 64 of 118, we find additional record support that when Mr. Arnett moved out of his time-limited ATC appointment, which the FAA says is a covered position, and moved into a non-covered position or a non-air traffic control position, he could move back to a covered position. The record support for that can be found at ER 28, ER 66, and ER 59. Let me ask you, it seems like from 2015 to 2018, an employee could not leave the RMC program and get rehired as an air traffic controller. I'm curious about the policy for non-RMC hires. Let's say you have a 29-year-old applicant who is hired as an air traffic controller. Can that person move freely from covered to non-covered positions after their 31st birthday? Sure. That if they meet the minimum qualifications of having to be a current FAA employee with one year of experience at whatever GS or FS level, the 21-52 series employee, that they can do that. And so your best authority for why the policies are not exempt, I guess, from ADA scrutiny is what? Is Babb v. Wilkie, Your Honor. The way in which the court describes the expansive reach of the ADA under Section 633AA, it does not allow the agency under 5 U.S.C. 3307B to ignore the requirements of 633AA. I believe that Babb says, sure, you know, you can have maximum entry ages, you can have forced retirement ages, but if someone is between the ages of 40 and 55, then the ADA applies, particularly in the federal government. I would think that an even better authority for that are the policies you've just read, where the agency itself treats for everyone else but Mr. Arnett and perhaps some others, we'll hear about that, as an original appointment only upon entry and not for promotion. Is that right? I mean, it's that original appointment language that's in the statute that your contention is, is that the agency has limited that original appointment for other employees only upon the initial entry. And so it wouldn't apply to other people's promotions. They're only applying it to Mr. Arnett's promotions. Right. The way that the RMC program operated, it basically erected barriers just for the people coming into the agency via the RMC program as it related to promotions and the flexibility to move back and forth between air traffic and non-air traffic. Would you concede that the RMC entry would have been the original appointment and that the agency at that point, that that would fall within the 3307B, just that the agency decided to waive that requirement for the RMCs? Yes and no. And let me tell you why I say no. Because Mr. Arnett, when he applied for the promotions at issue in this case, was already a permanent employee for over a year. So he could not have been an initial appointment under the RMC. He had moved out of the RMC program completely. And he's now just a regular permanent employee. And he's trying to do what the other regular permanent employees do, which is to move back and forth. And they said, no, you can't do it. Because when we first hired you, keep in mind we're in 2017, 2018. They're saying, well, because we hired you in 2007 under an RMC program, which we canceled in 2015, you can't do that. And I think that that is at best internally inconsistent. May I reserve the rest of my time? Yes, you may. Thank you. May it please the court. I am Assistant U.S. Attorney Michael Linton for the appellee defendant. The district court should be affirmed because the ADA is inapplicable in these unique circumstances. Plaintiff did not establish a prima facie case. He failed to show age was a but-for cause of his ineligibility. And then plaintiff did not just plead a disparate impact claim. But even if he did, he did not show a significantly adverse or disproportionate impact on employees over the age of 40. Is it clear or not from the record what kind of position he was applying for? He was applying for, yes, it was clear in the record, he was applying for, depending on the appointment, permanent and temporary covered positions, which were covered under Public Law 92-97. He was not applying for original appointments, just to be clear. The agency is not taking that position that he was applying for original appointments. Explain that, though. Why do you say that? Absolutely. His original appointment occurred in 2014 under the RMC program that carried with it special conditions. Is that defined? I mean, when you say original, where is that defined? The agency doesn't have a specific, explicit, codified definition of original appointment. But it is used in EMP 1.20, section 4A, page 72, to refer to the first time an individual is appointed to an air traffic controller position in the FAA. So it's not the first time they are employed. It is not whether they're permanent employees within the FAA. It's the first time they enter into a position that is covered under Public Law 92-97, which involves the direct separation of traffic or the supervision thereof. So do you concede, then, that 3307 doesn't apply? Or why would it apply otherwise? Exactly. Well, 3307 applies because it gives the agency authority to set a maximum entry age. But within which, an original appointment, it limits that delegation of authority, does it not, only to original appointments? It delegates the authority to set original appointments. Inherent with that authority is the authority to grant exceptions, like the RMC program that gave plaintiffs the opportunity to enter into air traffic controller service, without which he would never have been able to enter service in the first place. I guess I'm trying to figure out, where should we look to find that this limited delegation of authority is actually a broad delegation to do something beyond setting that original appointment? I mean, you suggest that once you're within the, because it allows you to set a maximum limit of age for an original appointment, if you decide not to apply that at the first time, you are outside of 3307B? I would answer it this way, that the authority is to set a maximum entry age, and with that, the conditions were set because this was an exception to that. What was the maximum limit of age that was set by the agency in the RMC program? There is no maximum entry age for entry into the RMC program. That is waived. For traditional appointments, it is 31. Traditional original appointments. Traditional original appointments. But you just said this isn't an original appointment. Correct. Correct. So the issue here is there's no claim that the agency is saying that you need to be a certain age to get these promotional opportunities. The court doesn't need to decide that. The, this, Mr. Arnett was ineligible for these appointments because of the conditions of his original appointment. I'm sorry, what's your authority on this? I asked that of your friend across the aisle, so I'd like to know your best authority to suggest that the RMC policies are also exempt from the ADA. Yeah, the RMC, because it is just an exception that they are creating to the maximum entry age. If the agency can set a maximum entry age, they should be able to grant policy-based exceptions to enable other people to enter in, notwithstanding their maximum entry age. Surely plaintiff is not going to argue that he shouldn't have been allowed to be appointed in the first place for not meeting the maximum entry age. So the agency has carte blanche to implement age discrimination policies. I guess I'm just trying to figure out your best case for the notion that employment policies that create exceptions to age limits are also exempt from the ADA. Well, Your Honor, the answer to that is that it's not creating, it's not the exceptions, the act of promotion, the act of applying, and the act of determining his eligibility was not subject to an age restriction. It was because of his original appointment. Going back to the maximum entry age and the mandatory retirement age, they are connected for the retirement purposes, for the years of service needed to retire. Those are good policy arguments, but those policies were reduced to the text that Congress enacted in 3307B. I guess the – I'm glad – I don't think we should spend much time on the McDonnell-Douglas framework, but with respect to the – I mean, do not the policies that deal with the 31st birthdays, those facially discriminate based on age, I think, which was Chief Judge Murguia's question. Do you concede that those are age discriminatory if they don't fall under 3307B? That if they do not – well, and what we're saying is that there is no policy that limited his appointment to these promotions based on his age. What about the – That is not the argument that we're making. It's because he had a temporary appointment under his original conditions of appointment. Because of his age? Because of – well, because he was in the RMC program beyond the age limitations that Congress authorized. So he was outside of those structures, outside of the limits that Congress allowed the agency to set, and this was an optional extension of that authority that the agency had the discretion to create. What else could the agency – I try to understand the implications of this argument. What other ways can the agency classify employees and disqualify employees for promotions based on age as long as it allows them in past the original appointment time? Well, I don't know the hypothetical scenarios in this case, but it's – the idea here is that in order to maximum and to meet the retirement requirements and build up enough of a retirement and to allow someone to become a permanent covered employee, you need to have entered at a certain age. And if you're going to waive that requirement, then the agency is faced with the situation of saying, well, you can't make someone a permanent employee when they have not entered at a certain age to build up that retirement. Well, those are all great policy arguments, but if any other employer did it, they would be covered by the ADA. That would be age discrimination. That's not an excuse for age discrimination. And it isn't. And in this case, I would just go back to the issue that at the time he was seeking these promotional opportunities, it was not an age requirement. It was because of his original appointment. The only time age factored in – And that policy is no longer in place now? So the history of the policy was that from 2000 to 2015, there was the RMC program, which allowed him to enter service and receive these positions. In 2015, the policy was canceled, but they created grandfathering provisions. And one of those was that if you leave your permanent covered position for a temporary non-controller, non-covered position, you lost your RMC status. And that's exactly what happened a month after this policy was changed. Plaintiff left that position for a non-covered appointment, a permanent non-covered appointment. And plaintiff has characterized that as saying, well, he's already a permanent employee. In 2018, you went back to the policy? Exactly. The agency readopted the policy in 2018, and since then, Mr. Arnett has enjoyed a series of promotions as well. Do you agree in terms of trying to find the best – the agency's own definition of what an original appointment is for these purposes? Do you agree that we'd find it there at EMP 1.20? Yeah, specifically, and I would say 1.20 Section 4A when it refers to the initial hire as a FAA controller. It's not the first time you enter the FAA as an employee. It would be the first time you enter as an air traffic controller, because remember, this is a covered position. It is covered under the Special Retirement Program. And so it is when you enter into that special abbreviated program that the rest of the federal employees are not – do not enjoy. Let me ask you – or try to ask you the same question that I asked Ms. Holton, because I'm trying to understand how the RMCs were treated differently from air traffic controllers hired outside of the RMC program, right? And I'm curious about the policy for RMC hires. So let's say you have a 29-year-old applicant who is hired as an air traffic controller. Can that person move freely between covered and non-covered positions after their 31st birthday? Yes, because they received permanent covered appointments as air traffic controllers under the age of 31, which Congress allowed the agency to set an age limit on. After that, after the age of 31, the agency is free to not hire them – is free to, under the covered policy and the statute, to set that age. So after that age, you require a special appointing authority, and with that special appointing authority, special conditions of appointment applied. Have you all discussed mediation at all? That was a discussion earlier, yes, Your Honor. So is it worth sending you to mediation? Well, Your Honor, even if the court believes that – and that is something that can be considered – but even if the court believes that the ADEA applies, plaintiff has not established a prima facie case and has not proven that this was a pretext for discrimination. Well, if it's not covered by 3307, why isn't the fact that you're treating employees who enter before 31 and those who enter after 31 differently, not just prima facie, the end of the ballgame? Well, because if it's not covered by – if the agency – if the court believes that it could be subject to ADEA policies and then it applies the McDonnell-Douglas factors – this is a direct evidence case. Nobody disputes that it was age as to why he – the reason was age, because he wasn't hired. Well, Your Honor, we do dispute that it was age as to why he was required. It's not – it was not his age. The only time age was an issue was in his original appointment. Well – That was the only time age was an issue. And far from being discriminatory, the RMC program enabled him to enter service. And part of that program, because it goes around this idea of having a set retirement – or a set time of service from the time of early entry into mandatory retirement, those positions could only be temporary and time-limited. This was a condition of that original appointment. Mr. Linton, I wonder where's the best place for us to go to understand the agency's rationale or policy? Where is it reflected, not just what the policy is, but where its reasons are grounded for drawing these distinctions? You talk about the retirement system, but can we find that somewhere? Is Congress authorized that outside of 3307B? Well, yes, Your Honor. Your Honor, if you look to the authority under not only the more recent reenactment of the policy under 49 – Section 44-506, which says that the agency may create a program like the RMC and may waive those waivers. Going back to the original congressional intent of 3307B, was that it is important to have a limit on age of entry that is related to mandatory retirement. So persons entering the occupations can be provided a full career. And if you're going to waive the maximum entry age, you can't give them a permanent appointment. Because then if somebody comes in at the age of 51, which would be allowed under the RMC program, and they need 20 years to build up a full retirement, they're not going to be able to retire until the age of 71. And that is the reason why the RMC program had those special conditions of appointment, that they're temporary and time limited. If the court believes that the ADA still applies, then we're saying, well, what was the reason for this policy? It was discriminatory animus. And it didn't. It had a policy basis. I guess this may be – if you don't know, this is fine. But do you have any – we're searching a little bit to try to understand how the original appointment language in the rest of 3307 has worked. Do you know anything about how these other agencies apply the language? Or has your agency or your client canvassed that at all? I don't believe that that information is in the record as to what other agencies have done. But this is a fairly unique circumstance. Mr. Arnett is the only employee in the record that anyone is aware of that was denied eligibility based on his very unique circumstances dating back to the conditions of his original appointment. And to that, I would just say that the ability to set a maximum entry age is also the ability to set exceptions to that based on very good policy reasons. And to do that and to provide people opportunities would not be discriminatory. It would be actually enabling someone with an opportunity in the first place. He's the only employee. He is the only employee the agency – there are many air traffic controllers around the nation. I understand. But what you just described right now, who's fallen into this sort of predicament? And you're not open to mediation? Well, Your Honor, that is possible. But to say mediation, the agency firmly believes that it was right for it to create an RMC program in the first place to give them the opportunity. And that was discretionary, and it had its policy reasons for rescinding the program temporarily for three years. That's all well and good. I'm just still kind of puzzled by the posture right now. But thank you. Do you have any concluding statement? Yes, Your Honor. With respect to the McDonnell-Douglas factors, the party's brief statewide, the plaintiff did not state a prima facie case as well as the – show discriminatory pretext. Plaintiff's complaint, I would add the plaintiff's complaint is limited to the issue of saying that the RMC program creates this negative label on employees and that the hiring officials and the agency specifically discriminated against him because they did not – Your Honor, in addition to that, plaintiff did not plead a disparate impact claim. Plaintiff pled disparate treatment. There's nothing of that in the record. In addition, plaintiff would have to establish under a disparate treatment claim or disparate impact claim that substantial statistical evidence shows that it had a substantial impact on people of his class, outside of his class, and that clearly is not the case in the record. Thank you, Mr. Arnett. If there are no further questions, we ask the Court to affirm. Thank you. Thank you. If I could just be – make certain that the record is very clear. At the time that Mr. Arnett applied for all three temporary and permanent positions, the RMC program did not exist. It had been canceled. He was a permanent employee working on the administrative side of things. When he applied for the temporary position, it was a one-year position. If he had worked the position – you know, let's say he was 53 years old at that time. He had worked the position for one year. He would have been 54 by the time the position, the temporary position ended. He still would not have yet been aged 56. The record is replete with evidence showing that the agency was looking at age as the major factor. For example, when you look at ER 66 lines 1 through 6, Ms. Dixon testifies that Mr. Arnett could have held that temporary position until age 56. But they still are saying, even though we don't have an RMC program, he's not in the program. There is no program. They're still saying, even though you're fully qualified, you're ineligible. So thank you for this opportunity. Thank you both very much, Ms. Sultan and Mr. Litton. It looks like you both traveled the furthest to be here today. You're from Tucson, Mr. Litton, but Ms. Sultan, you're here from Milwaukee. We wish you safe travels back. And again, thank you for your oral argument presentations. Here, the case of Brian Allen Arnett v. Pete Buttigieg is now submitted. The last case on our docket, Kenneth Cooper v. Window Rock Unified School District, has been submitted on the briefs. And that concludes our calendar for today. So we are adjourned. Thank you.
judges: MURGUIA, HAWKINS, JOHNSTONE